May it please the court. This court should reverse the district court's denial of the motion to suppress. The information relied upon in this case tests the outer limits of staleness and nexus requirements for a search warrant. No court has applied the good faith exception to allow a search over a decade after the crime was committed and in a location where the crime did not occur. The government's main argument is that the generalized presumption that individuals who possess child pornography hold on to it for a significant period of time is insufficient to overcome any staleness or nexus concern. Isn't this just more than simply just an argument that people have a tendency to retain child pornography, which as we know through the years has become less common because of the ubiquity of it, unfortunately, on the internet. But this is in fact pornography that was created by the defendant. It was pornography that he relished enough to show the victim to repeatedly. And it seemed to be more of a trophy than it did just a piece of pornography that somebody accumulated. Well, none of that information or even that kind of psychoanalysis wasn't put in the affidavit in this case. And our initial position is because that wasn't put in the affidavit, it shouldn't be considered or it's not very strong evidence to overcome. Well, the judge draws inferences, right? And if the judge is looking at this affidavit, I guess I looked at a lot of affidavits in my career. When I looked at an affidavit, if it said that he showed the pornographic images that he shot of the victim, that would have led me to reason, at least I drew inferences, that I'm more likely to hold on to that because that's not something that's readily available on the internet. So even if that could be a rational inference, it's not enough to overcome over a decade of time span, especially when you consider the fact that the defendant here moved multiple times. And Case also talks about inferences of people, even in a case cited by the government. People will keep this kind of, you know, these videos and these pictures at home in their private residence. Well, Mr. Argard was an individual who moved multiple different times and was living with his parents, which is not a private residence where you would keep, you know, you could keep securely to yourself evidence of a crime. It's also problematic in this case because as this court has said over and over again, even with these presumptions, they must be considered looking at the facts of this case. And when you look at this created child pornography, what it really looks like it was used was as part of the grooming process. The way that Mr. Argard used it as laid out in the affidavit was to continue the sexual abuse of the victim in this case. So that just illustrates why it's dangerous to rely on these overarching presumptions that weren't made by the officer, weren't relied upon by the district court when granting the search warrant, and would just be after the fact trying to maybe figure out what happened. What about the good faith exception? So the good faith exception doesn't apply, the main reason being that the probable cause is just so weak. I think that would have to be the argument, the facial, I forget the exact phrase, but so facially deficient that no reasonable officer could have relied on the judge approving it. There is also a Franks allegation, but the main overarching argument is that the officer's reliance on it was unreasonable because it was so stale. Who was the judge who signed this? It was a district court judge, Judge Hanson, who had signed the warrant. Polk County? Yes, who had signed the warrant. So you think he was so far off that an officer couldn't rely on it? Yes, Your Honor, that is our position. If you read the affidavit, comparing it with other case law, when there is this kind of delayed disclosure, a lot of times the affidavits that courts uphold, even under good faith, the officer will go into the background about, okay, here's why we believe the crime was committed, but also here's why we believe, and here's the basis based on the facts of the offense in my experience, for why this individual would continue to have this evidence, whether it be video, photos, whatever it may be. Here, the affidavit is thorough on what the allegation was of sexual abuse over a decade before, but there's nothing connecting to why, in 2018, Mr. Augard would still have the evidence of this crime after several moves while he was living with his parents. So that's why it's entirely unreasonable. In courts, the Seventh Circuit, as far as five years, has refused to find even probable cause because of staleness concerns. Counsel, we found at least two state appellate courts that ruled that up to a 20-year time span in cases involving sexual abuse of minors with photographs of the abuse, that that was not too long and would not render it stale. What about those? Are those relevant here? I mean, I don't think, they're obviously not binding on the court, and I haven't read them to see what persuasive authority they might have, how in-depth their analysis may be. I would support, or I would assert that this court shouldn't find that this length of time is sufficient, because it's not just the length of time. It's not just the passage of time that causes problems in this case. Here there's also the nexus concerns, where he's moved several times, and he's now living with someone else, and even though it's not in the affidavit, as part of the Franks argument, there's indications that he lived with other people before he moved in with his parents. So when you have, and there's case law, circuit case law, that indicates you have to have a showing that somebody, even in the Loy case, where it was their own house, there the Third Circuit said, well, the child pornography was delivered to a PO box. You've got to show us that he would have brought it home, as opposed to like a storage unit, or somewhere where someone might try to hide evidence of a crime. So when you combine those staleness with the nexus, it's insufficient, and good faith doesn't apply in these circumstances. You know, is the staleness analysis affected at all, because the affidavit says that the defendant continued to take any interest in GP, that the defendant went so far as, within two years of the time that the affidavit was signed, to contact him and ask GP why he hadn't been invited to his wedding? I mean, because that shows an ongoing interest that, it seems to me, doesn't make it quite so stale. I mean, it's still two years old. I mean, I get that. But it's, this looks like it went on for a long time, and there was a lot of interest. I would disagree, Your Honor. I think if these contacts indicated some sort of continuing sexual interest in the victim in this case, it would be a much harder case for me. But this, especially considering the nature of their relationship from the very beginning, it was a family-friend situation, that's how the victim was introduced to Mr. Augard, and that they were friends together, and that's the swimming meet, came down and talked with his family. I don't think that shows an indication of what the warrant must establish. The fact that he asked him if he wasn't invited to his wedding doesn't give any more faith or notion to the idea that he would continue to possess the pornography that he had created over a decade prior. So it's not strong enough to get to that point and to strengthen that argument. Before I sit down, I want to talk briefly about the Franks violation. If the court does not throw out the search warrant, alternatively it should be sent back for a Franks hearing. The affidavit failed to include two separate things. While it included that there was two moves, the police report or the report provided by the government indicated that there was more moves, that Mr. Augard was at least associated with multiple different residences over this 12- to 13-year period. It also did not include that Mr. Augard did not own the residence that he, in fact, was living with his parents. This is critical to the finding there was no probable cause even with it, but it lessens probable cause or weakens the evidence even more because, as is clear, the staleness and nexus concerns are very big in this case. And it's one thing to say, well, he moved twice in a 12-year time. It's another thing to say there was five, you know, he might have moved five times. He was more transient, less likely to take evidence of a very serious offense with him, especially if he's living with other people. Why do you say might have moved? Because it's not clear that he did move five times? So our position is that he did move, and the way we put that in was the accurate report. I guess I'm just giving credence to the government's assertion that, well, we don't know that he lived there. Our position is that he did, and that's why you'd have to have a Franks hearing to establish that. Yeah, the government's position is that, well, he kept his driver's license at his mom and dad's for all that time, so therefore we don't know. Yeah, my understanding of those accurate reports is that somebody, they're living at that residence or somehow having a tie that indicates that they were at that residence. What kind of report is it? Accurate report. What is it? I think it's on net, like on Lexis. I think our investigator uses it when they're trying to find witnesses or something like that to see where they live. What goes, what's the input that causes a name to be associated with an address? That I don't know. But our position is by putting in that report and also putting in that the detective here who drafted the affidavit knew that Mr. Augard was living at a residence that was not his, that he was living with other people, that met that preponderance standard to get to a hearing where the court should have taken this information into account and we could have established all of these facts. Why is ownership important? I mean, ownership versus renting or? Because even in the Lamb case that's block quoted by the government, when analyzing staleness and nexus concerns in child pornography cases, a presumption that courts apply is that you're likely to keep child pornography at your home in a private location where others can't find it. If you're staying with your parents in their house, you're less likely to keep evidence of a heinous crime there where it could be easily found by other people. So the material fact you're claiming is not ownership. It's that other people live there. Is that right or am I misunderstanding? It's a similar kind of thing. But yes, the idea that that wasn't his home. Or if he owned it. You say it would be different if he owned it and the parents were living with him. Yeah, I think the way I view it is the idea that he's living in someone else's house with them. That's my point. So it's more of a privacy distinction than who owns it. And he's less likely to keep the pornography because he's living with them than if he was living... By himself. By himself. Okay, very well. You may save the rest for rebuttal. Mr. Call, we'll hear from you. Good morning. Good morning. May it please the court, counsel. I'll start with the good faith question that Judge Collison asked. The standard under good faith is whether it was entirely unreasonable for the officer to rely on the search warrant as approved by, in this case, Judge Hanson. Here we had a detailed affidavit. I think it's something along the lines of 11 pages laying out in explicit detail the abuse that occurred over a one-year period, continued contacts for the couple of years thereafter. The affidavit included corroborating details that the officer had managed to put together. This was an experienced officer. She had the affidavit or the search warrant approved by a county attorney before presenting it to Judge Hanson. It was not entirely unreasonable for her to rely upon the search warrant. That's particularly so given the state of the law and given the government's view that the search warrant was, in fact, supported by probable cause. The question is whether there was a fair probability that the evidence being sought, these images, would have been retained. As Judge Erickson pointed out in his colloquy with Ms. Quick, these were not just Internet images that might be generally available. These were specific images of a specific victim that had been made and retained over a period of time. The evidence is that the defendant would use a camcorder of some sort to videotape the abuse and then on subsequent occasions show these images or these videos to the victim as part of the continued grooming process and continued abuse. The defendant had transferred those from the original recording as a computer file, so he had gone to the trouble of digitizing them. The staleness cases talk about the nature of the evidence. Because they're digitized, they're not likely to degrade. Common experience teaches that people will retain these sorts of images. Certainly in the case of a child producer of child pornography or a pedophile such as this defendant, that characteristic is well known and recognized by the cases. I think the judge could have also looked to common experience of people keeping and maintaining photographs that are important to them for an extended period of time. I would point out, too, that the search warrant application does, of course, point out that computers are an ideal repository for keeping and maintaining images of child pornography. I would point out, as well, the standard of review as to probable cause is giving deference, not to the district judge in this case, but to the issuing magistrate to Judge Hansen's conclusion that probable cause supported this search warrant. There is simply no bright line for staleness. At some point, these images will be maintained, or there's a fair probability that they will be maintained for an indefinite period of time. So whether it becomes two years, three years, five years, or in this case, 12 to 13 years, there's still that fair probability that they would be maintained. And the fact that Ms. Quick talks a lot in her brief about the fact that the officer didn't include a sentence in the search warrant affidavit saying, well, based on my training and experience, I know that these kinds of offenders maintain and retain this sort of information for an extended period of time, I think that's, first of all, implicit in the fact that she is seeking a search warrant for that kind of material that many years later. And I don't think that she needs to necessarily spell out the inference that we're asking the issuing magistrate judge, or the judge in this case, to apply. I want to talk a little bit about the Franks challenge and the question of nexus. The argument seems to have changed a little here. My understanding regarding the change of residence was the question of how many times had the defendant moved prior to the time the search warrant was obtained. It was clear from the affidavit that the defendant had moved at least three times, that the abuse occurred on a home on the south side of Des Moines. The defendant at some point lost his job and that residence was foreclosed upon. The defendant thereafter moved to Iowa City where he was working in the IT field for the University of Iowa for a period of time, and then by the time the search warrant has been obtained, he's moved to Cherokee. So the argument seems to be, well, the affidavit should have spelled out based on this accurate report that maybe he moved multiple times while he was in Iowa City. That's what that accurate report, if it's an accurate document, would indicate. But the affidavit to the search warrant made plain that the defendant had moved on multiple occasions. The theory that he still had the evidence at issue was based upon the nature of the evidence being sought. This is something that people are likely to retain. I didn't understand the argument to be that because he lived with other people, allegedly, that that somehow would affect the finding of probable cause or would be the kind of information that is so clearly critical and vital to probable cause that it would compel the district judge to exercise his discretion to hold a Frank's hearing with respect to the residence. I think it's both. She's saying both. Both points are relevant. You think? Yeah.  Well, the second argument is that, well, I didn't say that it was his parents' house in Cherokee, that there was no dispute that the defendant had obtained a driver's license using that address, that he was residing there, that he had registered his vehicle there. The vehicle was observed at that residence shortly before the search warrant was approved and executed. The fact that he was living in his parents' basement as opposed to, we know that he was residing at that address, isn't the kind of critical, vital information that would necessitate the convening of a Frank's hearing. What this case boils down to is an officer who took and corroborated the information that was provided to her when the victim reported the abuse years after the fact to the Des Moines Police Department. She took reasonable steps and reasonably relied upon a search warrant issued by a state court judge. There's no suggestion or really basis in the record to say that the judge abandoned his judicial function or acted as a rubber stamp on behalf of the government. Again, it really focuses on this entirely unreasonable prong of the Leon standard. Unless the court has any further questions, the government would otherwise rely on its priest and ask that the judgment below be affirmed. Very well. Thank you for your argument. Ms. Quick, you may be heard in rebuttal for three minutes and 36 seconds, if you wish. I want to start with the government's point that courts haven't always required that this information be in the affidavit to establish good faith, which is correct. But courts still do require something about the facts to indicate that the defendant is a collector of child pornography and would maintain that evidence, whatever it may be, for the extended period of time. And this is where the Raimonda case cited in my brief in the Second Circuit is instructive. And there it talks about circumstances that would indicate that someone is a collector of child pornography or would maintain the video or whatever it may be for an extended period of time. There was things like a defendant had stored it on a computer and made it difficult to access, indicating they wanted to keep it private and wanted it on the computer. There was also a case indicating a collector where they said if someone distributed it to other people, that could support and overcome some staleness concerns. Here, all the government points to is, well, it was transferred to a computer when the abuse was ongoing. That fact is insufficient to overcome the lengthy time period from the abuse to when the search warrant was executed, combined with the nexus concerns that are present in this case. And that is the only indication that could support any kind of conclusion that Mr. Agard was a collector or would have maintained that child pornography. And finally, to the Franks hearing, it was argued in the initial motion to suppress, both of those facts were improperly excluded and warranted a Franks hearing. And it is preponderance of the evidence to establish the requirement for a Franks hearing. And it's not enough to say, well, the evidence established or the affidavit established that there was moves. Because it's critical to the finding of probable cause that there are just these frequent moves, that Mr. Agard is someone who's more transient than an individual who might just periodically move throughout their life. And I won't repeat myself, but for the reasons stated, to keep it evidence of such a crime when living with other people. I want to conclude by noting that the government repeatedly uses and discusses staleness in terms of, will child pornographers keep it indefinitely? And that's problematic because that seems to be asserting this idea that if there's an allegation of child pornography, what's the time limit then that we can go into and search someone's house to look for evidence of this crime? The Seventh Circuit, even in the Purdue case where it found no probable cause, but eventually found good faith when it was only five years, noted that there was a limit to this presumption in child pornography cases. The idea of collectors keep it can't just overcome any time span. And I would assert based on the facts of this case, not only with the lengthy delay, but also the multiple moves that it is insufficient and the officer's reliance on it was unreasonable. Thank you. Very well. Thank you for your argument. The case is submitted and the court will file an opinion in due course. Thank you to both counsel. You may be excused.